DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA:         : CRIMINALNO. 3:16-CR-00191(MPS)

                         :

v.                    :

PABLO TEXIDOR         :

                         : DECEMEBER 14, 2017

## DEFENDANT'S SENTENCING MEMORANDUM

On August 29, 2017,  Pablo Texidor, agreed to waive his right to be indicted and entered a guilty plea to  Count One of the information charging him with importation of any product  used to manufacture a controlled substance, in violation of Title 21, United States Code, Sections 843(a)(7). Pursuant to the plea agreement, the agreed quantity involved is at least 10 grams, but nor greater than 20 grams of heroin.  Sentencing has been scheduled for January 4, 2017.  For the reasons set forth below, the defendant, Mr. Texidor, respectfully submits that a sentence of probation with continuous participation of drug rehabilitation and treatment through the U.S. Probation Office would be the proper sentence. In his guilty plea, and the plea agreement and stipulation, Mr. Texidor accepted responsibility for his criminal conduct, the Defendant, Mr. Texidor submits this memorandum to urge the Court, in the exercise of its duty to fashion a sentence tailored to be sufficient but not greater than necessary to serve the purposes of a sentence as set forth in 18 U.S.C. section 3553(a) (2).

## FACTUAL BACKGROUND

Mr. Texidor was presented to this Court and waived his right to an indicted and entered a plea of guilty on August 29, 2017 to Count One of the information charging him with importation of any product used to manufacture a controlled substance, in violation of Title 21,  U.S.C. §§ 843 (a)(7). The arrest was part of an investigation conducted by the Drug Enforcement Agency and Homeland Security Investigation (HIS) alleging that Mr. Texidor was responsible for importing components to make a pill press with the intention of utilizing such press to make tablets for distribution.  On March 15, the investigation led the DEA and HIS to a parcel scheduled to be delivered to Mr. Texidor's home address of 32 Lockwood Terrace in West Hartford, Connecticut.  Both agencies examined the parcel and determined that the parcel contained one set of tablet press dye.  Subsequently, on March 29, 2017, the Court issued a search and seizure warrant directed to Mr. Texidor residence at 32 Lockwood and the next day DEA and His executed the warrant and seized 99 pills which were heroin, monies and a suspected cut/binding agent. The total amount of heroin seized was approximately 14 grams and monies totaling $1897.00 dollars.   Subsequent testing at the DEA laboratory confirmed the determined weight of the heroin and its actual content. The Government and the defense agreed that the quantity of heroin involved was at least 10 grams, but less than 20 grams of heroin.

### B. Sentencing Framework

*United States v. Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), is a landmark case in that it rewrote 18 U.S.C. § 3553 (Sentencing Guidelines). *Booker* held that instead of the Sentencing Guidelines being binding on district

judges, it should instead be used as a guide, or advisory, when determining a sentence. The Court in *Booker* made "The Guidelines system advisory while maintaining a strong connection between the sentence imposed and the offender's real conduct—a connection important to the increased uniformity of sentencing that Congress intended its Guidelines system to achieve." *Id.* at 246. To change the understanding of the Sentencing Guidelines, the Court severed and excised two provisions, 18 U.S.C. § 3553(b)(1) and § 3742. *Id.* at 259. This Court must consider the Sentencing Guidelines in tailoring a sentence to the particular circumstances of the individual offender and the specific offense in a case. The Court is no longer instructed that is "shall" impose a sentence within the Guidelines range. Instead, the Guidelines are now one of several factors the Court must "consider" in arriving at a sentence that is "sufficient, but not greater than necessary" to achieve the purposes of sentencing.

These purposes are:

    (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

    (B) to afford adequate deterrence to criminal conduct;

    (C) to protect the public from further crimes of the defendant; and

    (D) to provide the defendant with needed educational or vocational training medical care, or other correctional treatment in the most effective manner. 18 U.S.C. Section 3553(a)

    In *Kimbrough v. United States*, 552 U.S. 85, 128 S. Ct. 558, 169 L. Ed. 2d 481 (2007), the Court used *Booker*, coupled with § 3553(a) to establish that the imposition of

a sufficient sentence is the primary goal, but the sentence cannot be greater than necessary.  In computing the applicable sentencing, it is essential for the Court to use the Sentencing Guidelines as "the initial benchmark."  See *Gall v. United States*, 552 U.S. 38, 49, 128 S. Ct. 586, 596, 169 L. Ed. 2d 445 (2007).  In United States v. Crosby, 397 F.3d. 103 (2d. Cir. 2005), the Second Circuit explained how courts should, post-Booker, approach sentencing and the determination of a fair sentence.  The Crosby Court explained that under 18 U.S.C. section 3553(a), the sentencing judge must consider several factors, including the Guidelines. Id. at 110.  The statutory duty to "consider" the Guidelines means that "a sentencing judge will normally have to determine the applicable Guidelines range, " and "[t]he applicable Guidelines range is normally to be determined in the same manner as before Booker/Fanfan" Id at 111. Although the sentencing judge must determine the Guidelines range in order to "consider" it, Crosby expressly declined to "determine what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the applicable Guidelines range. " Id. at 113.  What a sentencing court must do, then, is "consider the Guidelines and all of the other factors listed in section 3553(a). "Id. After considering the relevant factors in light of the principle that "the Guidelines are no longer mandatory, "the sentencing judge must decide "whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence." Id. The Second Circuit, in reviewing a sentence on appeal, has "decline[d] to establish any presumption, rebuttal or otherwise, that a Guidelines sentence is reasonable. " United States v. Fernandez,

443 F. 3d 19, 27 (2d Cir. 2006). In determining the appropriate sentence, the sentencing court must apply the "parsimony clause" set forth in U.S.C. section 3553(a), which provides that the court "shall impose a sentence sufficient, but not greater than necessary" to comply with the purposes of sentencing. The Second Circuit explained in United States v. Ministro-Tapia, 470 F.3d 137 (2d Cir. 2006), that if the Court believes a lower sentence will be as effective as a higher sentence in serving the purposes of sentencing, it must choose the lower sentence. See Id. at 142 (stating that where a Guidelines sentence is "in equipoise with [a] below-the- range sentence, "the parsimony clause requires imposition of the lower sentence.

## C. **Mr. Texidor's Advisory Guideline Range**

THE SENTENCE GUIDELINES  AND A DOWNWARD DEPARTURE and/or  NON-GUIDELINE SENTENCE OF PROBATION  WITH DRUG REHABILITATION AND TREATMENT MAKES  FOR AN  APPROPRIATE AND SUFFICIENT SENTENCE

In the present matter,  a written plea agreement between the Government and Mr. Texidor, dated August 29, 2017, detailed that the Government allowed the Court to have Mr. Texidor's adjusted offense level be reduced by two levels, pursuant to § 3E1.1 of the Sentencing Guidelines.  Based on an initial assessment, the parties did agree that Mr. Texidor falls either within Criminal History Category II or III.  In the agreement it was expressively given that Mr. Texidor did have the right to argue for a downward departure.  The Government agreed to this stipulation because Mr. Texidor wholesomely accepts the blame and responsibility of the above-mentioned offense.  Defendant acknowledges that his actions involved at least 10, but less than, 20 grams of heroin.   Originally, Mr. Texidor's offense level

was 14, but   Mr. Texidor accepted full responsibility, and as a result, the offense

level is further reduced to 12.   Aside from the offense level, it was determined that

his total criminal history score is 6**. PSR ¶33**.  The score of six places Mr. Texidor in

category III.  **USSG Chapter 5, Part A**. Based on the offense level and criminal

history, and if the Court accepts the Guidelines calculations as articulated in the

sentencing report then Mr. Texidor's sentence range would be  15-21 months.

However, in paragraph 61 of the PSR report it indicates that the defendant is eligible

for probation based on the fact that the offense is a Class E Felony.  We are

requesting that the Court depart downward and adopt the statutory provision in 18

U.S.C. section 3561 (c)(1) and placed Mr. Texidor on probation.

The above-mentioned cases, *Booker*, *Kimbrough*, and *Gall* support our

request for a downward departure of probation.  As stated previously, it was in

*Booker* that the Court ruled that district courts were not bound to the Sentencing

Guidelines.  It was to be used for "guidance" in the imposition of a sentence.  In this

case, the 15-21 month range is only to be used to advise the Court in imposing the

correct tailored sentence.   *Gall* supports that the guidelines are to be used as a

starting point; with Mr. Texidor 's  it is very important to take other considerations

into account.

Mr. Texidor dealt with a great difficulty in his life, he began using drugs at an

early age of 12 years old.  His substance use involved the entire spectrum of alcohol,

marijuana, cocaine and heroin. It is quite difficult to imagine that a twelve year old

from a working class family would indulge in drugs and alcohol but this occurred

with Mr. Texidor.  I am convinced that what really allowed Mr. Texidor to immerse

his life with drugs was when his father suddenly passed away from a heart attack at forty –two years old.   He experienced life without the essential guidance of his father when he needed him the most as a teenager.  It is unthinkable that if you are male and while you are at a young age, you lose the most important role model, your father.  This was a harsh reality for Mr. Texidor and to really sedate himself he decided to begin using heroin. As noted in the Pre-Sentence Report "Mr. Texidor… at age 15, he began using heroin, primary drug of choice. He explained he began sniffing heroin and then later, began to inject it. . **PSR¶46.** The use of drugs became routine and habitual at this early age. The Pre-Sentence Report reflects such usage. Mr. Texidor stated ".....he shared that he was able to keep his heroin use a secret until his family discovered the extent of his drug use at the

age 18. He estimated at the time of his arrest .... he was using up to 25 bags of heroin a day. ". **PSR¶49**

To this day, Mr. Texidor continues to struggle with substance abuse and would benefit immensely with the continuous participation of  drug treatment and counseling through the U. S. Probation Office. In this case, this would be the right course to take rather than a period of incarceration.

Even though there has been great difficulty and challenges with this addiction, Mr. Texidor has demonstrated the will to be sober and have a better life through working hard and staying employed.  Mr. Texidor, continuously attempted to address his drug addiction even as early as 2006.  In 2006, Mr. Texidor did successful complete the drug program at Mac-Dougall- Walker Correctional

Institution. . **(See Exhibit A).** In addition, the PSR report indicates that since his arrest and release to pretrial supervision, he has been in treatment with Community Renewal Team, Inc. in Hartford, Connecticut.  It should be noted since the PSR report's first draft, Mr. Texidor did receive a certificate of completion of the Relapse Prevention Group of  Connecticut Renewal Team dated on November 28, 2017.**( See Exhibit B and PSR¶50).**  Mr. Texidor, knew he needed this treatment and took it upon himself to really address this gorilla that has been living on his back, his drug addiction since he was fifteen years old. He is not someone who now stands before the Court claiming he has an addiction problem but someone who clearly has had an addiction and attempted over the years to address his substance abuse.

Moreover, Mr. Texidor, prior received several certificates that he is very proud of and still keeps to this day.  They are both from the State of Connecticut and one in particular was awarded to him by Governor M. Jodi Rell. He received this certificate through the Unified School District#1 and the Connecticut Department of Labor and a certificate in Graphic and Printing Technologies. He is very proud of this particular certificate because he put in a thousand hours of apprenticeship and educational training. **(See Exhibit C).** Mr. Texidor has always wanted something better in his life but never really had a road map for success. He has had a thirst for knowledge and education and took these classes to make him more employable.   This Court should be aware that there exists some depth in Mr. Texidor , a man who wants to see the world and he now realizes that the only way that this will be possible is through hard work, right decisions. In our private discussions, I was quite surprised when he indicated that he dream one day is to own and share a house with his partner, Paula

Serrano. He indicated that it would be so nice to have a barbecue and see his kids and grandkids running around in the yard and enjoying themselves.  This dream and goal should be commended and I am convinced now it can be a reality. I am extremely proud of Mr. Texidor in this accomplishment, his current employment. He currently works for EDAC Technologies as a janitor. The court should note that Mr. Texidor resonates when he talks about this job. He states "Mr. Johnson this is the first time in my life that I have and real job that pays me well and I feel real good about it."  Mr. Texidor makes seventeen dollars an hour and works ten to twelve hours a day. Prior, he worked at the Razor Sharp II in Hartford, Connecticut and worked there for six years before his new job at EDAC Technologies. (See Exhibit D). Now he feels that if he continues to work hard, purchasing and owning a house can be a reality.  He understands that making the correct choices and truly addressing your addiction the right way regardless of your environment and circumstances are the keys to success.  Hi goal now is
 to eventually own his own home, and in my opinion this is not only admirable but quite refreshing considering his drug addiction and life choices.  For now he struggles with his drug addiction and he realizes that this will be a life long battle. I am convinced that Mr. Texidor's battles with drugs have surely contributed to his criminal history.  Mr. Texidor would benefit from continuous participation in a drug treatment and probation, more so than a period of incarceration.  He will have to engage in counseling to maintain sobriety once on probation. *Kimborough* ruled that it is important for the sentence to not be greater than necessary.  In Mr. Texidor's case, a sentence of probation is sufficient in light of the circumstances and

what Mr. Texidor is now doing with his life. Probation is a sufficient sentence, as required in *Kimborough*.   Moreover, it should be noted that since his pre-trial release, Mr.  Texidor has made his best effort to comply with all the rules and regulations of the U.S. Probation Office's pre-trial supervision. He has been complaint and the court should use this as an indicator that he can abide by the rules of probation.**PSR ¶6.** Even though Mr. Texidor has had this drug addiction, he still can be rehabilitated and have a very positive life.  Mr. Texidor has begun to turn his life around, and he does have the strong support of his partner, Paula Serrano who loves him very much. **PSR¶ 43.**

CONCLUSION

The analysis of the case law and Mr. Texidor's drug treatment, employment, success while on pre-trial supervision  and as well as the statutory provision as enumerated in 18 U.S.C. section 3583(b)(3) should be heavily considered in support of Mr. Texidor's downward departure and a sentence of probation.  Based upon the previous stated information, the defense would submit that a sentence of probation and the continuous participation of a drug rehabilitation program and drug treatment are fitting for Mr. Texidor and his case.

DEFENDANT
Pablo Texidor

BY:_Ronald S John_
Ronald S. Johnson
His Attorney
100 Wells Street, Suite 2c
Hartford, CT 06103

## **CERTIFICATION**

This is to certify that on December 14, 2017, a copy of the foregoing was filed electronically to all parties by operation of the Court's electronic filing system or served by mail on anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

_____

Ronald S. Johnson

**Exhibit A**

# CERTIFICATE OF ACHIEVEMENT

*Pablo Texidor*

#268502

*has successfully completed the*

*Tier II Addiction Services Program*

*Program at the MacDougall-Walker Correctional Institution.*

*3 November 2006*



_____
B.Segura, LADC
Correctional Counselor Supervisor

_____
F. O'Gorman, CAC
Correctional Substance Abuse Counselor

**Exhibit B**

# CERTIFICATE OF COMPLETION

*of*

# Relapse Prevention Group

*Presented to*

## Pablo Texidor

*On*

## November 28, 2017

*Presented by*

### The Staff of the CRT Behavioral Health Services



Priscilla Jean-Nelson LMSW
Clinician II



**Exhibit C**



# Unified School District #1

## Certificate of Achievement

*Presented to*

Pablo Textdor

*in recognition of completion of the Re-entry Class*

Ms. K. Schnapp
*Teacher*

10/12/10
*Date*

C.W. Perro
*Principal*

10/12/10
*Date*

Connecticut Department of Correction

NON SUM QUALIS ERAM

Curriculum topics are on the reverse side



# State of Connecticut

**M. Jodi Rell**
Governor

## Completion Certificate

*Awarded to:*

## Pablo Texidor

By the the Unified School District #1 and the Connecticut Department of Labor
in Recognition of __1000__ hours in the
Prospective Apprenticeship Training Program/Vocational Education Program.
This Program Requires Proficiency in __12__ Curriculum Modules

*in the trade of*

## Graphics and Printing Technologies

*This Certificate in Witness thereof is given at Wethersfield, in The State of Connecticut.*

_____
*Superintendent of Schools*

__2/26/09__
*Date*

_____
*Instructor/Teacher*

_____
*Principal*

# Exhibit D



Friday, December 08, 2017

To whom it may concern:

This letter's intent is to confirm that Pablo Texidor is employed at EDAC Technologies – ND as a Maintenance worker. Pablo's normal schedule is Monday through Friday 07:00 AM to 5:30 PM, though some hours during weekends are required from time to time.

Pablo is a Maintenance worker, his duties include upkeep tasks such as cleaning, minor repairs, and assisting with machine/equipment preventive maintenance.

I have been pleased with Pablo's performance. He is a hard worker, and is motivated. Pablo has proven to work well with others and I know that others also hold him in high regard. I can say with all honesty, he has a great work ethic and is a pleasure to have as an employee. I've had to rely on him several times and Pablo has always been there when I've needed him.

Respectfully,

Hiram Christian
EDAC Technologies – ND
81 National Drive
Glastonbury, CT 06033

# RazorSharp 2
## Barbershop
### 191 Franklin Ave Htfd, Ct 06114
### 860-560-0654
20 years of barbering experience



## Come check us out
## and make your appointment
## TODAY!

